# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2861-19

T.F.,

     Plaintiff-Respondent,

v.

D.F.,

     Defendant-Appellant.

_____

Argued on May 11, 2021 – Decided June 3, 2021

Before Judges Gilson, Moynihan, and Gummer.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Morris County, Docket No. FM-14-0165-11.

D. F., appellant, argued the cause pro se.

T. F., respondent, argued the cause pro se.

PER CURIAM

In this appeal of a post-judgment matrimonial order, defendant D.F. (Debra)[1] argues the trial judge erred in granting plaintiff T.F. (Ted) interim supervised parenting time with their child and in suppressing her defenses pursuant to Rule 1:2-4 for failure to appear at a December 4, 2019 conference. We disagree and affirm.

The parties were married in October 2003 and have a daughter, C.F. (Carly), born in 2008. In June 2011, Debra obtained a final restraining order (FRO) against Ted based on a predicate act of harassment. The parties were divorced by way of a dual judgment of divorce entered on December 21, 2011. The judgment of divorce incorporated a settlement agreement providing Debra was the parent of primary residential custody and Ted would have parenting time. Since the divorce, the parties have had a contentious relationship and have filed numerous motions and appeals concerning Ted's parenting time with Carly.[2]

---

[1] We use fictitious names for ease of reading and to protect the identities of the parties. R. 1:38-3(d)(13).

[2] Debra also filed an appeal from an order denying her motion to recuse the family judge. We have affirmed that order in a separate opinion under docket number A-1083-19.

A-2861-19

## I.

Debra's stated reason for failing to appear at the December 4, 2019 conference was a pending appeal of a purported order denying a recusal motion she had filed. In fact, the recusal motion had not been decided, no order denying it had been issued, and her appeal had been deemed deficient.

According to Debra, on or about September 28, 2019, she filed a motion seeking the recusal of the trial judge, with an initial return date of November 8, 2019. The judge scheduled a conference for November 13, 2019. Pending before the court were Ted's request for parenting time and Debra's motions opposing Ted's request, for recusal, and to sequester Ted from all future court proceedings. Debra contacted the court multiple times, seeking an adjournment; the judge denied her request. On November 12, Debra again requested an adjournment, stating there had been a death in her family. The judge granted the adjournment request and left her a telephone message asking her to provide proof of the reason she had sought the adjournment.

Even though the judge had not yet decided or issued an order on the recusal motion, Debra submitted a notice of appeal, which we received on November 13, 2019, stating she was appealing a "[j]udgment" entered on

November 8, 2019.[3]   In her appellate case information statement, Debra described the "judgment" as "11-8-19 Denied Recusal."  When asked to list the proposed issues to be raised on appeal, she stated "Recusal."  She also checked "Yes" when asked if the judge had issued written findings or an opinion and "No" when asked if the judge had issued oral findings or opinion.

In a November 18, 2019 letter, the clerk of the Appellate Division advised Debra her appeal was deficient because, among other reasons, she had not attached a copy of any judgment or order, as required by Rule 2:5-1, and the appeal would be dismissed if she did not correct the deficiencies within fifteen days.

In a letter dated November 19, 2019, the trial judge rescheduled the conference and again asked Debra to provide proof of the reason she had sought the adjournment.  In response to a letter she had sent regarding decisions on outstanding motions, the judge in a November 25, 2019 letter advised Debra he

---

[3]  In her main brief, which was filed on April 30, 2020, Debra asserts she "was notified verbally the recusal motion was denied and [she] would receive the order, but [she] did not."  She claims the judge "purposefully withheld the orders to intentionally block my [a]ppeal rights."  That assertion contrasts with information provided to the Appellate Division by the trial judge in a November 27, 2019 letter, copies of which were sent to the parties.  The trial judge stated he had not yet issued any orders on her pending motions and that Debra had been advised over the telephone the motions were still pending.

would "be addressing the outstanding motions" at the December 4 conference. In a letter dated November 25, 2019, which she faxed to the court on November 26 at 7:40 p.m., Debra requested an adjournment of the conference based on her "current [a]ppeal pending on Your Honor's [r]ecusal." The judge responded in a letter dated November 27, 2019, telling her he understood her appeal was deficient because she had not provided an order; all of her pending motions would be heard and decided at the December 4 conference, which would not be adjourned; he disagreed with her assertion the court could not schedule a case management conference; and he had not yet received proof of the reason she had sought the adjournment of the November 13, 2019 conference and directed her again to provide the requested information.

On the morning of December 4, Debra sent a letter to the court, stating she had "spoken with [an Appellate Division clerk] on December 2[], 2019, and the Appellate Division still has jurisdiction on my docketed appeal." She asserted she had been advised she could not "argue in Superior Court, and the Appellate Division simultaneously" and asked the judge "to hold the pending conference until after the Appellate [Division] . . . gives me a decision, so the orders do not become interlocutory, and block my appeal rights." She also stated "[i]f the order in response to my recusal can only be obtained by appearing in

court, even though my motion is uncontested, past the return date, and I did not request oral argument, I am requesting additional time to appear with a domestic violence advocate, since I have been victimized in Your Honor's courtroom." The judge's secretary called the Appellate Division and spoke with the Appellate Division clerk, who said he had not spoken with Debra but had left a message in response to a message she had left.

On December 4, the judge stated on the record Debra had failed to appear and found her failure to appear to be "inexcused." He explained the purpose of the day's proceeding was to "afford everyone a . . . hearing" and to "decide these outstanding motions," meaning Ted's request for parenting time, which had been pending for over two years, and Debra's motions. As for her asserted reason for seeking an adjournment of the hearing – her appeal of a purported order denying her recusal motion – the judge accurately stated the appeal was deficient and confirmed he had not yet ruled on the pending motions and had not issued an order on her recusal motion. He reviewed the relevant procedural history, including Debra's multiple efforts to adjourn the hearing, her failure to provide proof of the basis for her November 12 adjournment request, and her failure to seek a stay. He stated a domestic-violence advocate would have been provided to Debra that day if she had appeared and requested one. Citing Rule 1:2-4, the

6

judge suppressed Debra's defenses as a sanction for her failure to appear. He explained she could move to restore her defenses and, even if she did not move to restore, would be permitted to cross-examine witnesses at a future proceeding but could not testify.

The judge decided the pending motions, granted Ted parenting time supervised by the previously appointed guardian ad litem pending a future hearing regarding his request for unsupervised parenting time, and issued orders memorializing those decisions. In granting Ted interim supervised parenting time, the judge confirmed Ted and Carly had not seen each other in three years and found:

> [Debra] has gone on a campaign . . . of . . . using various judicial resources, State resources, with the result being that [Ted] is continuing to be deprived of the affections of, and the relationship with [Carly].
>
> The [c]ourt continues to find that [Debra's] efforts are concerted, they are purposeful, and they continue to alienate the child from the affections of [Ted].
>
> The [c]ourt has gone to great lengths to try to reunify the parties. . . .
>
> [Ted] has been shown to not have done anything . . . . There's been no proof that he has done anything that was alleged years ago that led to his supervised parenting time, and then a complete shut-down of the parenting time, nothing.

7

Approximately six years ago there was an allegation that [Ted] inappropriately touched his daughter. That was brought to law enforcement's attention, it was brought to [the Division of Child Protection and Permanency's] attention. Both entities closed their files.

The child was asked. The child said during a tender[-]years interview, that Daddy did nothing of the sort. That that's Mommy's story. Ask Mommy about that. That's what the child said twice.

. . . .

We have gone through every safety check, opportunity to ease this relationship back into a relationship.

And in the [c]ourt's opinion, it . . . has been frustrated only by one party, and it wasn't [Ted]. . . .

[Ted] was willing to pay for the therapy. He picked up the majority of the guardian's expense at this point, and – and were just met with obstinance . . . for no reason.

He has been shown to have committed no crime or wrongdoing, yet he suffers the punishment as if he did so.

And that's wrong.

On appeal, Debra argues the judge erred in suppressing her defenses and granting Ted interim supervised parenting time, asserting: Rule 1:2-4 does not include as a sanction the "exclusionary rule," which applies in criminal not civil

8

cases; the judge improperly granted Ted parenting time supervised by the guardian ad litem, who has not appeared for conferences or hearings and has not interviewed Debra or Carly; the judge violated her first-amendment right to free speech by "precluding [her] from a hearing"; the judge violated her due-process rights when on April 19, 2018, he found Carly was being alienated from Ted's affections; the judge improperly scheduled case-management conferences in a way that violated her due-process rights by impeding her ability to obtain a stay or leave to appeal; and the judge was "rogue" and was "trying to block [her] appeal rights."

In response, Ted argues Debra has refused to follow any court orders or therapist or doctor recommendations concerning Carly's relationship with Ted and contends Debra appealed "to block any and all reunification efforts" between Ted and Carly. He asserts, without dispute, he has not had any parenting time with Carly in several years.

## II.

Our review of a family judge's factual findings is limited. N.J. Div. of Child Prot. & Permanency v. J.B., 459 N.J. Super. 442, 450 (App. Div. 2019). We defer to a family judge's factual findings when supported by substantial, credible evidence in the record because the judge has "special expertise in

matters related to the family." N.J. Div. of Youth & Fam. Servs. v. F.M., 211 N.J. 420, 448 (2012); see also Cesare v. Cesare, 154 N.J. 394, 413 (1998). We intervene only when a trial judge's factual conclusions are "so wide of the mark" that they are "clearly mistaken." N.J. Div. of Youth & Fam. Servs. v. G.L., 191 N.J. 596, 605 (2007). We review de novo a judge's legal conclusions. J.B., 459 N.J. Super. at 451.

"The trial court has an array of available remedies to enforce compliance with a court rule or one of its orders." Gonzalez v. Safe & Sound Sec. Corp., 185 N.J. 100, 115 (2005); see also Williams v. Am. Auto Logistics, 226 N.J. 117, 124 (2016) (noting the "expansive discretion" a trial court "wields in managing its docket"); Kohn's Bakery, Inc. v. Terracciano, 147 N.J. Super. 582, 584-85 (App. Div. 1977) ("There is no doubt at all of the right of a trial judge, as an exercise of discretion, to impose sanctions for violation of the rules or failure to obey the orders of the court, and these sanctions may include dismissal of the action.").

Rule 1:2-4(a) authorizes a trial court to dismiss a complaint or strike an answer if "without just excuse" a party fails to appear at a court proceeding. Dismissals of pleadings for failure to appear are usually without prejudice and "should generally not be employed where a lesser sanction will suffice."

10

Connors v. Sexton Studios, Inc., 270 N.J. Super. 390, 393 (App. Div. 1994). "The extent to which [one party] has impaired [the other's] case may guide the court in determining whether less severe sanctions will suffice." Gonzalez, 185 N.J. at 116.

We see no error in the judge's finding that Debra's failure to appear at the December 4 conference was "inexcused" or in his decision to strike her defenses without prejudice as a sanction. Her stated reason for not appearing was her pending appeal of a purported November 8, 2019 order denying the recusal motion. In fact, the recusal motion had not been decided – that was one of the purposes of the December 4 conference – and, contrary to her assertion in her appellate case information statement, the judge had not issued written findings or an opinion. Unsupported by any order – because no decision had been rendered and no order had been issued – her appeal was deemed deficient, a fact Debra knew from the Appellate Division clerk's November 18, 2019 letter. The judge fairly considered Debra's earlier failure to appear when the conference was scheduled to take place on November 13, 2019, given she had not responded to the judge's repeated reasonable requests she provide proof of the purported family death that was the stated basis for her adjournment request.

A-2861-19

The judge suppressed her defenses without prejudice, expressly permitting her to move to restore her defenses and to cross-examine witnesses at future proceedings. Given the parties' self-represented status and Debra's limited financial means, lesser sanctions were not available; given the history of the case, the suppression of Debra's defenses without prejudice was appropriate.

We also see no error in the judge's decision to grant Ted interim supervised parenting time, which was supported by findings on the record. The allegation that resulted in the suspension of Ted's parenting time had been rejected by law enforcement authorities and the Division. At the time of the December 4 proceeding, Ted had not seen Carly in three years despite the court's use of "every safety check [and] opportunity to ease this relationship back into a relationship." See Wilke v. Culp, 196 N.J. Super. 487, 496 (App. Div. 1984) (holding the law "favors visitation and protects against the thwarting of effective visitation rights"); In re Adoption of J.J.P., 175 N.J. Super. 420, 430 (App. Div. 1980) (finding "[a]bsent serious wrong-doing or unfitness, the right of visitation is strong and compelling"). As the judge found, Carly has "an absolute right to have a relationship with both parents unless there's some reason not to. [] I'm still waiting to hear the reason why there's no relationship here. I[] have not heard it."

A-2861-19

We find insufficient merit in Debra's remaining arguments to warrant further discussion in a written opinion.  <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2861-19