# **RECORD IMPOUNDED**

### **NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1966-17T2

P.V.P.,

    Plaintiff-Respondent,

v.

F.J.C.,

    Defendant-Appellant.

_____

        Submitted March 16, 2020 – Decided June 8, 2020

        Before Judges Messano and Vernoia.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County, Docket No. FM-13-0449-09.

        August J. Landi, attorney for appellant.

        Senoff & Enis, attorneys for respondent (Michael Jude Gunteski, on the brief).

PER CURIAM

The parties are before us a third time. They married in 2003, and their son, John, was born in 2008.[1] As we explained in our two prior opinions, a final restraining order (FRO) entered pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35, and pendente lite orders entered in the matrimonial litigation, awarded plaintiff custody of John and granted defendant supervised visitation. P.V. v. F.C., No. A-3151-09 (App. Div. Feb. 8, 2011) (slip op. at 1–2); P.V.P. v. F.J.C., No. A-2859-14 (App. Div. April 13, 2016) (slip op. at 2–3). The property settlement agreement executed by the parties in 2010, and annexed to their judgment of divorce (JOD), provided that plaintiff would have sole legal custody of John. With respect to parenting time, the parties agreed to "abide the [c]ourt's [o]rder regarding reunification therapy."

Motion practice continued unabated after the divorce, some history of which we set out in our prior opinion. P.V.P. at 3–4. Ultimately, in May 2012, the court entered an order granting defendant's request for a plenary hearing on modification of custody and parenting time. Id. at 5. However, the judge then hearing the matter delayed the plenary hearing until defendant paid in full a $25,000 fee award. Id. at 10. We reversed and remanded the matter to the

[1] We have used initials in the caption of our opinion and fictionalized the child's name throughout pursuant to Rule 1:38-3(d)(3) and (9).

Family Part to conduct the plenary hearing on defendant's modification application within ninety days before a different judge. Id. at 26–27.

For our purposes, it suffices to say that the plenary hearing was not scheduled within ninety days, and did not commence until April 26, 2017, before a judge who had no prior involvement in the matter. After a multi-day hearing, which we discuss below as necessary to address the issues presented on appeal, the judge issued an oral decision and accompanying order (the June 2017 order).[2] He concluded defendant had failed to present sufficient evidence of changed circumstances to warrant modification of residential custody and refused to modify the FRO that, among other things, prohibited defendant's contact with his son, and hence, by implication, his presence at John's school. The judge granted defendant unsupervised parenting time with John one weeknight per week and one supervised overnight on the weekend, and, if after two months without any incident, two unsupervised weeknights, all subject to further evaluation at a hearing to be held November.[3] The judge reserved on plaintiff's application for counsel fees incurred during the plenary hearing.

---

[2] Defendant represented himself during the hearing.

[3] Defendant had remarried, and his new wife was supervising visitation between John and defendant for several years at this point.

A-1966-17T2

On September 19, 2017, the judge entered an order (the September 2017 order) awarding plaintiff $30,000 in fees and costs, which was seventy-five percent of her request. In a written statement of reasons, the judge rejected defendant's claim that plaintiff's opposition to his request to modify custody demonstrated bad faith, since, at the time defendant brought the motion, he had only limited court-ordered supervised visits with his son. The judge also found that because defendant represented himself throughout the plenary proceedings, he incurred no expenses. However, the judge concluded defendant protracted the litigation and rejected all reasonable possibility of settlement. Noting that defendant did not contest his ability to pay, the judge ordered defendant pay the award within thirty days.

On a date undisclosed by the record, plaintiff forwarded to the judge a September 11, 2017 letter from John's treating psychologist, Charles D. Katz, Ph.D., to plaintiff's counsel. Dr. Katz had been counseling John for approximately two-and-one-half years, and, before the plenary hearing, defendant had filed an in limine motion to bar Dr. Katz's testimony and order the appointment of a new therapist.[4] The letter detailed Katz's interaction with

---

[4] There is reference to the motion as pending in a transcript of proceedings during an April 2017 case management conference that immediately preceded

John during sessions held immediately before the first overnight visitation contemplated by the June order, and those held thereafter. Simply put, the letter painted the picture of a young boy tormented by apprehension of spending overnight parenting time with his father and anxiety thereafter.

Now represented by counsel, defendant filed a motion asking the court to have John's court-appointed Guardian ad Litem (GAL) provide an updated report and permit defendant to retain his own expert. It additionally sought release of the transcript of an in-camera interview the judge conducted with John during the plenary hearing, expungement of Dr. Katz's letter and an order barring him from continuing to treat John. Defendant also sought to stay the prior award of counsel fees pending further hearings on modification of custody and parenting time. Plaintiff cross-moved to terminate defendant's overnight parenting time.

The judge heard argument and rendered an oral decision. In part, in addressing defendant's objections to Dr. Katz's report and his inability to respond to "this lopsided view" of John's anxiety, the judge said

> [defendant] may take the position that maybe these are
> inappropriate feelings the child had . . . . There's no

the hearing. At the time, plaintiff's counsel indicated Katz did not wish to testify and plaintiff did not intend to call him as a witness. Katz did not testify at the hearing.

A-1966-17T2

reason for these things. But the child expresse[d] it alone to me and then expresse[d] the same thing to the doctor? I mean, whether it has anything to do with [defendant's] fault or not, I'm still dealing with a child who has these anxieties, appears to have these anxieties based on what I've heard and what I saw when I interviewed him as well as [what] Dr. Katz saw.

The two orders entered by the court permitted the release of a CD and transcript of the judge's in camera interview of John, denied defendant's request to retain his own expert, denied expungement of Dr. Katz's report and permitted his continued counseling of John, denied any stay of the fee award and suspended overnight parenting time pending reunification therapy and a recommendation from the therapist that it continue (the November 2017 orders).

Defendant appeals from certain provisions of the June, September, and November 2017 orders. He argues: the court violated his constitutional rights by failing to hold the plenary hearing for five years after first ordered; and, that the judge's findings following the hearing were unsupported by substantial credible evidence and defendant demonstrated substantially changed circumstances that justified an award of joint legal custody and expanded parenting time. Defendant also contends that the November orders suspending overnight visits resulted from a violation of his due process rights because the judge relied on Dr. Katz's letter to plaintiff's counsel without affording

6

defendant an opportunity to rebut its contents. Defendant also argues he formally moved to modify the FRO, but the judge never ruled on the issue. Lastly, defendant argues the award of counsel fees should be set aside.

We have considered these arguments in light of the record and applicable legal standards. We affirm in part, reverse in part, and remand for further proceedings.

## I.

While not condoning the significant delay between the 2012 order granting defendant a plenary hearing and its start nearly five years later, we reject plaintiff's asserted constitutional violation. Defendant correctly points out that Rule 5:8-6 requires the court to set a custody hearing date "no later than six months after the last responsive pleading." Initially, the order granting a plenary hearing anticipated a brief period of discovery, but otherwise anticipated compliance with the Rule. Discovery was extended, and unfortunately, the judge then managing the case conditioned the hearing on defendant's payment in full of a fee award.

Shortly after our judgment reversing that condition and remanding, the parties engaged in mediation. Both parties acknowledge that in July 2016, the court conducted a case management conference at which they agreed updated

discovery was necessary. In August, four months after our judgment, the parties entered into a consent order permitting additional discovery, and, it appears from the record that further discovery took place through December. Initially, the hearing was assigned to a judge serving on recall. We cannot say with certainty why he did not conduct the hearing; however, the matter was assigned to another recall judge who held a case management conference on April 4, 2017, and began taking testimony on April 26.

During this time, defendant continued to have his regularly-scheduled visits with John prior to the plenary hearing, and provided no evidence supporting his claim that the delay allowed plaintiff to further alienate John's affections for his father. As we discuss below, after conducting the plenary hearing, the judge rejected defendant's claim. We need not address the argument any further. R. 2:11-3(e)(1)(E).

Turning to defendant's substantive challenges to the June order, it is axiomatic that the best interests of the child is the fundamental legal principle guiding our review. D.A. v. R.C., 438 N.J. Super. 431, 450 (App. Div. 2014) (citing Kinsella v. Kinsella, 150 N.J. 276, 317–18 (1997)). "A custody arrangement adopted by the trial court, whether based on the parties' agreement or imposed by the court, is subject to modification based on a showing of

changed circumstances, with the court determining custody in accordance with the best interests standard of N.J.S.A. 9:2-4." Bisbing v. Bisbing, 230 N.J. 309, 322 (2017). "A party seeking to modify custody must demonstrate changed circumstances that affect the welfare of the child[]." Hand v. Hand, 391 N.J. Super. 102, 105 (App. Div. 2007). "Absent exigent circumstances, changes in custody should not be ordered without a full plenary hearing." Faucett v. Vasquez, 411 N.J. Super. 108, 119 (App. Div. 2009) (citing R. 5:8-6; Entress v. Entress, 376 N.J. Super. 125, 133 (App. Div. 2005)).

It is equally well-established that "[w]e grant substantial deference to a trial court's findings of fact and conclusions of law, which will only be disturbed if they are manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence." N.H. v. H.H., 418 N.J. Super. 262, 279 (App. Div. 2011) (quoting Crespo v. Crespo, 395 N.J. Super. 190, 193–94 (App. Div. 2007)). This is particularly so where the evidence is largely testimonial and rests on the judge's credibility determinations. Gnall v. Gnall, 222 N.J. 414, 428 (2015). In addition, we particularly "recogniz[e] the court's 'special jurisdiction and expertise in family matters.'" Thieme v. Aucoin-Thieme, 227 N.J. 269, 282–83 (2016) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)). However, "[a] more exacting standard governs our review of the

trial court's legal conclusions[,] . . . [which] we review . . . de novo." Id. at 283 (citing D.W. v. R.W., 212 N.J. 232, 245–46 (2012)).

In this case, the hearing judge considered the statutory factors, and defendant does not contend otherwise. Instead, defendant claims the judge failed to address defendant's testimony with respect to the statutory factors, and the judge's conclusion that the evidence was insufficient to demonstrate a change of circumstances warranting modification was contrary to the prior orders granting a plenary hearing on the issue. We disagree.

The analytic paradigm is clear. In considering an application for modification, the issue

> is two-fold and sequential. Defendant must first make "a prima facie showing . . . that a genuine issue of fact exists bearing upon a critical question such as the best interests of the child[] . . . ." Pfeiffer v. Ilson, 318 N.J. Super. 13, 14 (App. Div. 1999) (alteration in original). Once a prima facie showing is made, defendant is entitled to a plenary hearing to resolve the disputed facts. Hand, 391 N.J. Super. at 111.
>
> [Faucett, 411 N.J. Super. at 127–28.]

In short, prior orders granting a plenary hearing by no means compelled the result that defendant was entitled to modification of the existing custody and parenting time orders. However, defendant seemingly fails to recognize that the judge actually did modify the prior custody and parenting time arrangement.

10

Pursuant to the June order, the judge granted defendant one, and potentially two, unsupervised weeknight visits with John. Until then, all of defendant's parenting time was supervised. The June order also granted defendant one supervised overnight visit with John; until then, defendant had no overnight parenting time with his son.

We gather from the conclusion of defendant's brief—which asks for us to exercise original jurisdiction and implement a specific parenting time schedule—that he deems the June order to have been an inadequate modification. We also note that defendant does not specifically challenge the denial of that portion of his modification request that sought joint custody of John. In any event, we reject the invitation to exercise original jurisdiction and affirm the relevant provisions of the June order.

In his oral decision following the plenary hearing, the judge specifically reviewed the statutory factors with reference to the hearing testimony that supported his findings. The judge noted that while defendant produced numerous witnesses, their testimony was not particularly helpful. He observed, for example, that a number of witnesses were complimentary of plaintiff's care toward John. In short, the judge heard testimony from plaintiff, defendant, and

11

more than one dozen other witnesses. We find not basis to substitute our judgment for that of the hearing judge.

## II.

We consider out-of-sequence defendant's multiple challenges to the November order. Defendant asserts that the judge violated his due process rights by considering and relying on Dr. Katz's September 11, 2017 letter and using it as a basis to terminate defendant's overnight visits with John. Defendant further argues the judge "off-loaded his judicial responsibility" to the reunification therapist, who the order charged with deciding when overnight visits could resume. While "we are obliged to give deference" to what we recognize was the judge's "exceedingly difficult and delicate decision[] as to the best interest of" John under the circumstances presented, Abouzahr v. Matera-Abouzahr, 361 N.J. Super. 135, 157 (App. Div. 2003), whether the proceedings complied with constitutional guarantees is a matter of law, for which we owe no deference to the judge, E.S. v. H.A., 451 N.J. Super. 374, 383 (App. Div. 2017). We agree that defendant was denied a fair opportunity to rebut the contents of Dr. Katz's letter, and, because the judge relied heavily on that letter to modify defendant's parenting time with John, we reverse those provisions of the November order that suspended overnight visitation and remand for further proceedings.

"In implementing the 'best-interest-of-the-child' standard, courts rely heavily on the expertise of psychologists and other mental health professionals." Kinsella, 150 N.J. at 318. Our Rules specifically recognize the court's ability to appoint its own expert, and the parties' right to retain their own experts. Rule 5:3-3(a). It is generally "improper for a court to decide a case in reliance on an expert opinion without allowing the parties to examine the expert." Luedtke v. Shobert, 342 N.J. Super. 202, 215 (App. Div. 2012). "Clearly, the right to cross-examine expert witnesses is of central importance in custody matters[, and] the right of cross-examination is a critical component of the adversary system." Id. at 216; see also Entress, 376 N.J. Super. at 132–33 (reversing trial court's order changing custody without a plenary hearing based on "unsworn letters from a 'frustrated' [court-appointed] therapist").

As it relates to this case, the Court has specifically acknowledged that "[e]valuators are more likely than treating psychologists to be objective, noting a

> psychiatrist who has served as a therapist for one contesting party in the past, or who is currently a therapist for either one, is simply not in an ethical position to make a recommendation regarding the best interests of the children because of the lack of first-hand knowledge and/or clinical evaluation of the opposing spouse whom he or she has never seen.

A-1966-17T2

> [Kinsella, 150 N.J. at 320 (quoting Melvin G. Goldzband, Confidentiality in Disputes Over Custody and Visitation, 1 REV. CLINICAL PSYCHIATRY & L. 133, 138 (1990)).]

The judge's reliance on Dr. Katz's letter, sent to plaintiff's counsel after a plenary hearing where the court heard no expert testimony at all, was legal error. The judge relied on its contents to grant relief that plaintiff sought in her cross-motion, i.e., termination of overnight parenting time, without according defendant any opportunity to challenge or rebut the letter's contents.

We remand the matter for the court to conduct a further hearing on the parenting time schedule that serves John's best interests. We agree with defendant that our opinion in P.T. v. M.S., under decidedly different facts, cautioned courts not to "allow experts to shoulder excess responsibility or authority, nor trial judges to cede their responsibility and authority[,]" and that the judge "must not abdicate its decision-making role to an expert." 325 N.J. Super. 193, 216 (App. Div. 1999). We stress that following the remand hearing, it is solely the judge's province to decide what the appropriate parenting time schedule should be and how and when it should be implemented, after giving due consideration to any expert opinions and other evidence adduced at that time.

14

We leave the conduct of the remand hearing to the judge's sound discretion, including the extent and nature of any testimony he or she deems necessary. Certainly, given the passage of time and for other obvious reasons, we are in no position to exercise original jurisdiction and order a particular parenting time schedule, as defendant requests. The judge should give fair consideration in advance of the remand hearing to the requests of the parties, including, for example, defendant's request that John's GAL provide an updated report or testify. We express no opinion about the current relevance of any evidence offered through him or other witnesses defendant wishes to have testify given the passage of time.[5]

Lastly, although we earlier rejected defendant's appeal from the Family Part's denial of his motion to vacate or modify the FRO, see P.V., slip op. at 7–8, throughout these proceedings he sought relief from the FRO that implicitly prohibited his presence at John's school. The judge's oral decision following the plenary hearing never specifically addressed the issue, only mentioning the FRO

---

[5] Defendant also argues it was error not to permit release of the in-camera transcript of the judge's interview of John. Frankly, we do not understand the point, since the November order permitted release of the CD and transcript of the interview. If for some reason that never occurred, as defendant asserts in his brief without attribution to anything in the record, we reiterate that defendant should have access to them in advance of the remand hearing.

A-1966-17T2

in considering, as he was required to do, the statutory factors regarding custody. See N.J.S.A. 9:2-4 (requiring judge to consider "the parents' ability to . . . communicate[,]" and "the history of domestic violence, if any"). The June order does not grant or deny relief from any provision of the FRO.

N.J.S.A. 2C:25-29(d) requires a showing of good cause for relief from an FRO. To determine whether good cause has been shown, the court examines the Carfagno factors. G.M. v. C.V., 453 N.J. Super. 1, 13 (App. Div. 2018) (citing Carfagno v. Carfagno, 288 N.J. Super. 424, 434–35 (Ch. Div. 1995)). The burden of demonstrating good cause is on defendant. Grover v. Terlaje, 379 N.J. Super. 400, 409 (App. Div. 2005). The same principles apply to a request to modify specific provisions of an FRO. Ibid. We conclude this issue, too, must be addressed on remand.

Because the hearing judge made fact and credibility determinations, we order that a different judge conduct the remand hearing. P.T., 325 N.J. Super. at 221.

### III.

In our prior opinion reversing the counsel fee award of $25,000 and compelling its payment before scheduling a plenary hearing on custody, we noted the award could not be justified pendente lite in anticipation of costs

16

associated with the hearing under Rule 5:3-5(c) for several reasons. P.V.P., slip op. at 21–22. We also noted it could not be justified as a sanction for defendant's "bad faith[,]" a finding unsupported by the record. Id. at 23. Further, we observed that the "award was not supported by an affidavit of services as required by the Rules; nor did the court perform a lodestar analysis." Id. at 24. We did not preclude a fee award for costs incurred by plaintiff in conducting the plenary hearing; however, we noted "the court may do so only after an appropriate review of the factors under Rule 5:3-5(c), including defendant's and plaintiff's financial need and ability to pay." Id. at 24.

After reserving decision on plaintiff's request for counsel fees in his oral decision supporting the June order, the judge awarded plaintiff counsel fees and costs of $30,000 in the September order. The order itself includes the only statement of the judge's reasoning.

The judge wrote that plaintiff's fee application met "all Rule requirements and appear[ed] reasonable." He stated that defendant's opposition to the application "in no way question[ed] the amount or reasonableness of the fee application, but relie[d] solely on the theory of 'bad faith' on the part of the [p]laintiff in opposing the [d]efendant's motions." The order provided that plaintiff did not demonstrate bad faith, and plaintiff "reasonably disputed"

defendant's modification motion, most of which the court denied. At the same time, the order provided that "[i]n some ways[,]" defendant's motion was justified in "looking to expand parenting time and transition to unsupervised time[,] which [was] reflected in this [c]ourt's decision." Nonetheless, the judge found that defendant's "repeated motion practice" and request for full custody, when he only had supervised visitation at the time, "prevented any reasonable amicable resolution of his demands." The judge further wrote, "[d]efendant did not contest his ability to pay [the fee] or the claim of disparity in incomes." Accordingly, the court awarded approximately 75% of plaintiff's request.

Defendant asserts that the judge failed to provide any detail regarding his factual findings and legal conclusions, nor did he consider each parties' ability to pay. Plaintiff's response is that the award was justified because of defendant's bad faith.

"We will disturb a trial court's determination on counsel fees only on the 'rarest occasion,' and then only because of clear abuse of discretion." Strahan v. Strahan, 402 N.J. Super. 298, 317 (App. Div. 2008) (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)). "Rule 5:3-5(c) provides numerous factors the judge should consider in determining a counsel fee application . . . ." Clarke v. Clarke, 359 N.J. Super. 562, 572 (App. Div. 2003). These factors include:

A-1966-17T2

(1) the financial circumstances of the parties; (2) the ability of the parties to pay their own fees or to contribute to the fees of the other party; (3) the reasonableness and good faith of the positions advanced by the parties; (4) the extent of the fees incurred by both parties; (5) any fees previously awarded; (6) the amount of fees previously paid to counsel by each party; (7) the results obtained; (8) the degree to which fees were incurred to enforce existing orders or to compel discovery; and (9) any other factor bearing on the fairness of an award.

[Ibid. (citing R. 5:3-5(c).]

We have no doubt that the September order attempted to address some of these factors, albeit without specific reference to the Rule.

In any event, plaintiff's assertion that the fee award was justified because the judge found defendant acted in bad faith is unsupported by the equivocal statements contained within the order itself. Moreover, as we already noted, defendant was actually successful in modifying his parenting time schedule as a result of the hearing. The judge's finding that defendant did not contest the parties' respective incomes did not constitute a reasoned consideration of "the financial circumstances of the parties," or their respective abilities to pay their own fees or contribute to the other's fees. Nor did the judge conduct any lodestar analysis. J.E.V. v. K.V., 426 N.J. Super. 475, 493 (App. Div. 2012).

We reverse the September order and remand the matter to the Family Part. Although we have ordered that another judge conduct the remand hearing regarding parenting time and modification of the FRO, we have confidence that the judge is capable of deciding upon review of the existing record whether plaintiff is entitled to a reasonable and just award for counsel fees and costs incurred as a result of the plenary hearing.

Affirmed in part; reversed in part, and remanded for further proceedings in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1966-17T2