MESSANO, P.J.A.D.
*376 Plaintiff E.S. and defendant H.A. are the parents of R.A. (Richard), born in 2004.[1] The parties separated in December 2008, *377 and after a contentious period during which plaintiff alleged acts of domestic violence (DV), and defendant successfully litigated against her claims, the marriage ended in a consent judgment of divorce (JOD) filed on September 8, 2009. The parties were unable to resolve issues of custody and parenting time prior to entry of the JOD.
Earlier in 2009, plaintiff had contacted the Division of Child Protection and Permanency (DCPP or the Division) regarding Richard's inappropriate, overtly sexual behavior. The Division began to investigate whether defendant had sexually abused Richard. In April 2009, the parties entered into a consent order in the matrimonial action that restored defendant's parenting time, which had been suspended during the DV proceedings. However, a subsequent domestic violence complaint resulted in a temporary restraining order and renewed suspension of defendant's parenting time.
When the court dismissed the last of plaintiff's domestic violence complaints following a multi-day trial that also ended in September 2009, plaintiff thereafter successfully sought an order to show cause temporarily suspending defendant's parenting time until the judge could review the Division's records regarding its investigation. On October 5, 2009, after completing her review, the judge dissolved any restraints and ordered resumption of defendant's parenting time in accordance with the April 2009 order.
On November 10, 2009, the Division advised defendant its "investigation determined that abuse was substantiated for sexual molestation with regard to [Richard]," and that "[y]ou have been identified as a person responsible for the abuse." Defendant apparently sought an administrative appeal because, on February 19, 2010, the Division advised him the "finding of abuse" as to one incident, July 27, 2009, was overturned. However, the Division's finding of abuse as to a second incident on July 6, 2009, remained in place. Defendant filed a request for further review before the Office of Administrative Law (OAL).
*378 Meanwhile, plaintiff sought reconsideration of the denial of her earlier request to suspend all parenting time. By July 2010, the OAL hearing still had not taken place, nor had the Division initiated a Title 9 or Title 30 action. The Family Part judge *688 overseeing the matrimonial action entered an order setting a plenary hearing for October "on the issue ... whether it is in the best interests of ... [Richard] that parenting time with his father ... should resume."
No hearing took place, as issues and disputes continued to arise regarding expert witnesses. In January 2011, the judge appointed Dr. Jennifer L. Perry, Psy.D., as the court's expert, and charged her with evaluating "when and in what manner it w[ould] be in the best interest of ... [Richard] to resume parenting time with his father ...." The parties' litigious conduct continued; it is unnecessary to detail the reasons for, or results of, various court appearances that followed.
In a February 2012 order, the judge provided copies of Dr. Perry's reports to counsel, and the parties again appeared before the court on April 2, 2012. Although the order entered that day indicates the judge took "sworn testimony," there was no testimony. After listening to the arguments of counsel, the judge prohibited defendant "from any and all contact with" Richard, "with the exception of the supervised visitation with Dr. Perry or any other visitation ordered by th[e] court." The judge permitted the parties to engage in discovery and set new dates for a plenary hearing in July 2012.
In May 2012, defendant withdrew his administrative appeal of the Division's substantiated finding of abuse. No plenary hearing took place during the summer of 2012. In November, a different Family Part judge took over the litigation, and a plenary hearing began in January 2013 and continued on non-consecutive days until May. The parties thereafter submitted written proposed factual findings and legal conclusions.
On November 22, 2013, the judge issued an oral opinion on the record explaining the reasons supporting his order filed that day *379 (the November 2013 order). The record reflects only defense counsel was present; plaintiff's counsel had a court appearance in another county, was running late and the judge decided not to wait.
The judge found by clear and convincing evidence, that defendant had sexually abused Richard. The order granted plaintiff sole legal and physical custody of Richard and denied defendant parenting time. Section 3 of the order required that, before making any application for parenting time, defendant
shall comply with the requirements set forth by Dr. Jennifer Perry in her testimony, which include:
a. Admission of wrongdoing;
b. A psycho-sexual evaluation by a professional specializing in same; and
c. Individual therapy.
In Section 4, the order further provided that, "[i]f and when the [d]efendant completes the aforementioned requirements, he may apply for consideration of parenting time through Therapeutic Management of Reunification (TMR)."[2]
In his oral opinion denying both parties' requests for counsel fees, the judge noted plaintiff's counsel's request was "vague," and he did not "know whether she's going to do something. Some post judgment motion probably ...." The November 2013 order simply denied both parties' requests for counsel and expert fees.
Plaintiff sought reconsideration, asking the order specifically include the judge's finding that defendant had sexually abused his son, and modifying the order to clarify *689 that her request for fees was denied without prejudice. The judge granted the motion for reconsideration and entered the January 10, 2014 order (the January 2014 order) that stated defendant "sexually abused" Richard, and denied plaintiff's request for fees without prejudice.[3] *380 The January 2014 order reiterated the requirements of the November 2013 order imposing preconditions on defendant's future applications for parenting time.
Plaintiff submitted a request for fees. Defendant's opposition never asserted an inability to pay. Rather, defendant claimed plaintiff was solely responsible for the plenary hearing, because she refused to accept Dr. Perry's initial recommendation of TMR. Defendant asserted the "proper forum for this case should have been ... a proceeding initiated by the Division."[4]
After conducting a hearing, the judge rendered an oral opinion and memorialized it in his June 9, 2014 order (the June 2014 order), requiring defendant to pay plaintiff $60,000 in attorney fees and $2488 in costs in monthly installments of $10,000. The order further provided that "these fees and costs shall not be dischargeable in bankruptcy."
Defendant moved for reconsideration and plaintiff cross-moved to enforce the award. In his certification, defendant, for the first time, asserted an inability to pay counsel fees awarded to plaintiff. The judge's August 29, 2014 order (the August 2014 order) granted defendant's motion in part, reducing the monthly installments to $500, but denying all other relief. The judge denied plaintiff's request for counsel fees in opposing the motion.
Plaintiff filed another motion for reconsideration, seeking an order reducing the counsel fee award to judgment, as well as an award of additional fees for making the motion. Defendant cross-moved, seeking a stay of the award and counsel fees for opposing the motion. The judge's February 4, 2015 order (the February 2015 order) denied plaintiff's motion and granted defendant's *381 motion in part, awarding him $2520 in counsel fees as an offset against the award previously made in favor of plaintiff.
In A-3230-14, defendant appeals the November 2013 order that followed the hearing; the January 2014 order that granted plaintiff's motion for reconsideration and added additional terms to the original order; the June 2014 order awarding plaintiff counsel fees; and the August 2014 order largely denying his request for reconsideration of the fee award.
In A-3256-14, plaintiff appeals from the August 2014 order reconsidering the fee award and the February 2015 order denying her motion for reconsideration. We calendared the cases back-to-back, and now consolidate them for purposes of issuing a single decision.
In A-3230-14, we reverse those provisions of the November 2013 and January 2014 orders that required defendant to "comply with [certain] requirements"
*690 "[p]rior to" making "any application for parenting time" with his son, but otherwise affirm. We affirm in A-3256-14.
As to A-3230-14
[At the court's direction, Section I of its opinion, which concerns discrete issues, has been redacted from the published opinion because it does not meet the criteria set by R. 1:36-2(d) for publication. The published parts of the opinion continue as follows.]
II.
A.
In Point II, defendant argues the provisions of the November 2013 and January 2014 orders requiring his admission of "wrongdoing" "[p]rior to" making "any application for parenting time" violate his constitutional right against self-incrimination. As a corollary argument, defendant claims the judge erred in relying on Hoch's and Perry's opinions that his admission of wrongdoing was a necessary predicate to TMR, because they were "net" opinions unsupported by any indicia of scientific reliability. In response, plaintiff only contends defendant failed to raise the issue in the *382 trial court, and Richard's best interests require defendant's admission of abuse before TMR can commence.
Preliminarily, defendant's claim that the opinions expressed by Hoch and Perry were net opinions lacks sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E). Defendant also suggests Perry never conditioned parenting time, or initiation of TMR, upon his admission of wrongdoing. However, in responding to a question from the judge, Perry said:
I would say that if ... Your Honor determines that sexual abuse has occurred and a perpetrator is not willing to admit to that and get the services needed in order to prevent that-or reduce the likelihood of that occurring again, ... there should be no visitation.
Plaintiff is correct that defendant never raised a constitutional challenge to conditioning future applications for parenting time upon an admission of wrongdoing, and we
adhere[ ] to th[e] long-standing principle[ ] ... 'that our appellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest.'
[ State v. Robinson , 200 N.J. 1, 20, 974 A .2d 1057 (2009) (quoting Nieder v. Royal Indem. Ins. Co. , 62 N.J. 229, 234, 300 A .2d 142 (1973) ).]
"However, if the issue is of special significance to the litigant, to the public, or to the achievement of substantial justice, and the record is sufficiently complete to permit its adjudication, we may consider it." Borough of Keyport v. Maropakis , 332 N.J.Super. 210, 216, 753 A .2d 154 (App. Div. 2000) ; see also Ricci v. Ricci , 448 N.J. Super. 546, 567, 154 A. 3d 215 (App. Div. 2017) (considering constitutional challenge to Family Part's award of college costs because "clarification of the law is necessary"); J-M Mfg. Co. v. Phillips & Cohen, LLP , 443 N.J.Super. 447, 458, 129 A .3d 342 (App. Div. 2015) (considering argument raised for the first time on appeal regarding application of the entire controversy doctrine to be "of sufficient importance to merit discussion"), certif. denied , 224 N.J. 527, 135 A .3d 148 (2016). "[T]he Nieder rule's exceptions are most fruitfully applied where the focal issue is entirely a question of law, in respect of which lower court determinations are *383 accorded limited deference." *691 Am. Civil Liberties Union of N.J. v. Cty. of Hudson , 352 N.J.Super. 44, 72, 799 A .2d 629 (App. Div. 2002). For the following reasons, we relax Nieder's restrictions and consider defendant's constitutional arguments.
The issue defendant now raises is of significant importance to defendant, his son and other potential litigants in cases of this nature. As we said nearly twenty years ago:
This case is an example of a tragic but recurring dilemma in certain family court cases involving allegations of child sexual abuse. On the one hand, there are clearly cases of imagined or even fabricated charges against a parent, especially when raised during the pendency of divorce proceedings. For a parent to stand accused of such an offense is devastating both to that individual, and to the child's lifelong relationship with the parent. On the other hand, proof of such abuse, especially involving a very young child, is rarely clear, and the potential danger to a child from a reoccurrence, if the suspicions and accusations are well-founded, is enormous.
[ P.T. v. M.S. , 325 N.J.Super. 193, 198, 738 A .2d 385 (App. Div. 1999).]
Further, although the issue at trial was whether and under what conditions should defendant's parenting time be restored, it is entirely unclear whether defendant had an opportunity to address potential judicially-imposed pre-conditions to any future request he might make. Defendant might have properly moved for reconsideration, but his failure to do so should not bar our consideration of this significant issue. Moreover, the record is complete, because both Hoch and Perry testified at length, were subject to extensive cross-examination and defendant eschewed any opportunity to present his own expert on the subject of TMR or any necessary preconditions. Lastly, whether the provisions violate defendant's constitutional rights raises a purely legal issue, and even if the trial judge were afforded the opportunity to consider the argument, we would review his decision de novo. Motorworld, Inc. v. Be n kendorf , 228 N.J. 311, 329, 156 A .3d 1061 (2017).
As a result, we move to the substance of defendant's arguments.
B.
Our courts have long recognized "[t]he right of a parent to raise a child and maintain a relationship with that child, without *384 undue interference by the state, is protected by the United States and New Jersey Constitutions." N.J. Div. of Youth & Family Servs. v. E.P. , 196 N.J. 88, 102, 952 A .2d 436 (2008) (citations omitted). Our court has held that "a parent's rights to the care and companionship of his or her child are so fundamental as to be guaranteed protection under the First, Ninth and Fourteenth Amendments of the United States Constitution." Wilke v. Culp , 196 N.J.Super. 487, 496, 483 A .2d 420 (App. Div. 1984), certif. denied , 99 N.J. 243, 491 A .2d 728 (1985) ; see also N.J.S.A. 9:2-4 (declaring it to be the State's public purpose "to assure minor children of frequent and continuing contact with both parents after the parents have separated or dissolved their marriage"). Therefore, "the law favors visitation and protects against the thwarting of effective visitation[.]" Wilke , supra , 196 N.J.Super. at 496, 483 A .2d 420.
"That fundamental parental right, however, is not without limitation. The State has a basic responsibility, as parens patriae , to protect children from serious physical and psychological harm, even from their parents." E.P. , supra , 196 N.J. at 102, 952 A .2d 436 (citation omitted). A parent's custody or visitation "rights may be restricted, or even terminated, *692 where the relation of one parent (or even both) with the child cause emotional or physical harm to the child, or where the parent is shown to be unfit." Wilke , supra , 196 N.J.Super. at 496, 483 A .2d 420.
"New Jersey's privilege against self-incrimination, although not enshrined in the State Constitution, is deeply rooted in this State's common law and codified in both statute and an evidence rule[,]" State v. Muhammad , 182 N.J. 551, 567, 868 A .2d 302 (2005), and "offers broader protection than its federal counterpart under the Fifth Amendment." Id. at 568, 868 A .2d 302. Pursuant to N.J.S.A. 2A:84A-19, and its equivalent, N.J.R.E. 503, every person in New Jersey "has a right to refuse to disclose in an action ... any matter that will incriminate him or expose him to penalty ...."
*385 [A] matter will incriminate (a) if it constitutes an element of a crime against this State, or another State or the United States, or (b) is a circumstance which with other circumstances would be a basis for a reasonable inference of the commission of such a crime, or (c) is a clue to the discovery of a matter which is within clauses (a) or (b) above; provided, a matter will not be held to incriminate if it clearly appears that the witness has no reasonable cause to apprehend a criminal prosecution. ...
[ N.J.S.A. 2A:84A-18 ; N.J.R.E. 502.]
Although the orders under review do not define the necessary prerequisites of defendant's admission of wrongdoing, based upon the evidence at trial and the judge's factual findings and conclusions, it can be presumed that defendant would have to admit he sexually assaulted Richard. See N.J.S.A. 2C:14-2(b) (defining sexual assault as sexual contact between a victim less than thirteen years of age by an actor at least four years older). A prosecution for a violation of N.J.S.A. 2C:14-2(b) may be commenced at any time. N.J.S.A. 2C:1-6(a)(1). As a result, defendant's admission of "wrongdoing," whenever made, potentially exposes him to criminal liability.
"Both the United States Supreme Court and our New Jersey courts have consistently held that the state may not force an individual to choose between his or her Fifth Amendment privilege and another important interest because such choices are deemed to be inherently coercive." State v. P.Z. , 152 N.J. 86, 106, 703 A .2d 901 (1997). It does not matter whether the particular proceeding is itself a criminal prosecution. See ibid. (collecting cases). Rather, "the Fifth Amendment is violated 'when a State compels testimony by threatening to inflict potent sanctions unless the constitutional privilege is surrendered.' " Id. at 106-07, 703 A .2d 901 (quoting Lefkowitz v. Cunningham , 431 U.S. 801, 805, 97 S.Ct. 2132, 2135, 53 L.Ed. 2d 1, 7 (1977) ).
In P.Z. , the Court considered "whether a caseworker from the [Division] must give Miranda warnings to a parent prior to a non-custodial interview related to a child abuse investigation." Id. at 92, 703 A .2d 901. The defendant acknowledged he was not in custody at the time, id. at 102, 703 A .2d 901, but argued "his statement was obtained in a similarly coercive manner because he *386 was faced with an implied threat that his children would not be returned unless he admitted responsibility for his youngest daughter's injuries." Id. at 107, 703 A .2d 901.
Citing two out-of-state decisions, which we discuss below, the Court concluded, "Although an admission of abuse may aid in the rehabilitative process, termination of custody is not automatic on invocation of the privilege. We therefore consider inapplicable those cases holding unconstitutional a requirement that an individual choose between the right to remain silent and *693 another vital interest." Id. at 108, 703 A .2d 901. The Court recognized a distinction between a "direct threat" to a vital interest or a "previously held benefit" and, "instead, a possibility that therapeutic outcomes will be determinative of parental rights." Ibid. It explained:
[The defendant] was not asked to choose between his children and the exercise of his right to remain silent. If he abused his daughter, and if he refused to acknowledge his acts of abuse, he would find it difficult to demonstrate that he could care for his children without harming them. This was the risk he faced. [The Division's caseworker] did not threaten him with termination of his parental rights if he did not confess; nor did she tell him that the only way he could get his children back was to confess. We conclude that [the] defendant's statement ... was not coerced in violation of his Fifth Amendment privilege against self-incrimination.
[ Id. at 209, 738 A .2d 385.]
Here, however, the orders directly threaten defendant's parental rights, because defendant may not petition the Family Part for modification unless and until he waives his privilege against self-incrimination and admits "wrongdoing." The decisions of several of our sister states have explained the distinction drawn by the Court in P.Z. , between compelled self-incrimination-in violation of constitutional rights-and incriminatory statements that might be necessary for meaningful reunification therapy to begin.
In In re Welfare of J.W. , 415 N.W. 2d 879, 880-81 (Minn. 1987), a case cited by the P.Z. Court, the defendant-parents challenged a dispositional order that required them to undergo psychological evaluations, which included explanation of the circumstances that led to the death of a two-year old child in their care. The State threatened to terminate their parental rights if they would not *387 agree. Id. at 881. The parents objected claiming the order violated their constitutional right against self-incrimination. Ibid. The court concluded "that the trial court's order, to the extent it requires appellants to incriminate themselves, violates appellants' Fifth Amendment rights and is unenforceable." Id. at 883. However, the court made clear the limits of the parents' privilege:
While the state may not compel therapy treatment that would require appellants to incriminate themselves, it may require the parents to otherwise undergo treatment. Therapy, however, which does not include incriminating disclosures, may be ineffective; and ineffective therapy may hurt the parents' chances of regaining their children. These consequences lie outside the protective ambit of the Fifth Amendment.
....
... In the lexicon of the Fifth Amendment, the risk of losing the children for failure to undergo meaningful therapy is neither a "threat" nor a "penalty" imposed by the state. It is simply a consequence of the reality that it is unsafe for children to be with parents who are abusive and violent.
[ Id. at 883-84.]
The Vermont Supreme Court reached a similar conclusion in In re M.C.P. , 153 Vt. 275, 571 A .2d 627 (1989), another case cited by the P.Z. Court. There, the trial court ordered continued custody of the minor with the child welfare agency "until the parents g[ot] over the extreme denial of any abuse and seek counseling to overcome these problems ...." Id. at 640. Adopting the analysis of the court in J.W. , the court concluded that portion of the dispositional order "may be read as a requirement that the parents waive their Fifth Amendment Privilege," and then *694 struck that provision from the order. Id. at 641. The court explained:
The trial court cannot specifically require the parents to admit criminal misconduct in order to reunite the parents to admit criminal misconduct in order to reunite the family. On the other hand, the parents must demonstrate to the court that it is in the juvenile's best interest to return custody to the parents in the face of the serious misconduct the court found they engaged in. While the court may not specify that the only route to reunification is an abandonment of the self-incrimination right, the parents must expect that the court and [the child welfare agency] will act based on the findings of extreme parental abuse. If the parents can find a way to show that they have become good parents, without admitting to any misconduct, and that a restoration of custody of the juvenile to them is in the best interest of the child and is safe, the court may not foreclose the option. If the court finds in the future, however, that the parents have made no progress to reunification *388 because their denial prevents effective therapy, it may act on that finding to the parents' detriment without offending the Fifth Amendment privilege.
[ Ibid. ; accord Mullin v. Phelps , 162 Vt. 250, 647 A. 2d 714, 724-25 (1994).]
Most courts around the country have recognized the distinction between a court-compelled waiver of a parent's right against self-incrimination, which violates the Fifth Amendment, and an order compelling a parent's participation in counseling or reunification services, the success of which might hinge on the admission of abuse. See, e.g. , In re A.W. , 231 Ill. 2d 92, 324 Ill.Dec. 530, 896 N.E. 2d 316, 326 (2008) ("[A] trial court may order a service plan that requires a parent to engage in effective counseling or therapy, but may not compel counseling or therapy requiring the parent to admit to committing a crime."); In the Interest of C.H. , 652 N.W. 2d 144, 150 (Iowa 2002) ("The State may require parents to otherwise undergo treatment, but it may not specifically require an admission of guilt as part of the treatment."); Minh T. v. Ariz. Dep't of Econ. Sec. , 202 Ariz. 76, 41 P .3d 614, 618 (App. 2001) (recognizing "a distinction between a treatment order that requires parents to admit criminal misconduct and one that merely orders participation in family reunification services"); State v. Suzette M. (In re Clifford M.) , 6 Neb.App. 754, 577 N.W. 2d 547, 558-59 (1998) (reversing termination of parental rights "solely because [the defendant] refused to waive her right to be free from self-incrimination," but recognizing court may order enrollment in therapy as "essential to a particular parent's rehabilitation"), appeal dismissed , 258 Neb. 800, 606 N.W. 2d 743 (2000).
No reported New Jersey decision has squarely addressed this issue,[5] and we find the cited out-of-state decisions to be *389 persuasive. Here, the November 2013 and January 2014 orders conditioned any future request by defendant for parenting time upon his admission of "wrongdoing," which we presume, based on Perry's testimony, means defendant must admit that *695 he sexually abused Richard. Such a requirement compels defendant to waive his privilege against self-incrimination and violates his rights under the Fifth Amendment and our State Constitution.
Although defendant has not specifically challenged the balance of the November 2013 and January 2014 orders that impose other preconditions upon him "[p]rior to any application for parenting time," and further provide he may apply "for consideration of parenting time" only if he completes these requirements, we conclude these portions of the orders must also be vacated.
In Parish v. Parish , 412 N.J.Super. 39, 48, 988 A .2d 1180 (App. Div. 2010), we recognized that a citizen's constitutional right to access to the courts applied to matters in the Family Part. While reaffirming the court's inherent power "to control the filing of frivolous motions and to curtail 'harassing and vexatious litigation,' " ibid. (quoting Rosenblum v. Borough of Closter , 333 N.J.Super. 385, 387, 391, 755 A .2d 1184 (App. Div. 2000) ), we nevertheless reversed the judge's order enjoining the plaintiff-father from filing any future motions, including enforcement of parenting time requests, unless the parties and their attorneys first conducted a settlement conference. Id. at 44, 988 A .2d 1180. We concluded that "in the absence of any finding of a need to control baseless litigation, the balance struck by the motion judge in favor of restricting access to the court was an abuse of discretion." Id. at 51, 988 A .2d 1180.
We reach the same conclusion here. Undoubtedly, this litigation has been protracted, contentious and, on occasion, unnecessary. However, defendant has consistently denied that he abused his son, and so testified at trial. Clearly, the judge rejected this *390 testimony and found, by clear and convincing evidence, that defendant had sexually abused Richard. The judge also clearly accepted Perry's testimony that not only was defendant's admission of wrongdoing a necessary precondition to effective therapy and future parenting time, but also that defendant must undergo individual therapy and submit to a psycho-sexual evaluation before the process can begin.
Putting aside preconditioning any application of defendant's admission of wrongdoing, which, as explained above, violated defendant's constitutional rights, we conclude imposition of these other preconditions violated defendant's right to invoke the equitable powers of the Family Part to modify its order denying him any parenting time. It may well be that any future application may fail, absent defendant's efforts to address the very issues Perry saw as vital to the gradual reinstitution of parenting time. However, the court should not reach that conclusion in advance of such a request. Although the judge undoubtedly made a good faith attempt to foreclose unnecessary motion practice in what had been an excessively litigated case, these provisions of the November 2013 and January 2014 orders improperly restrict defendant's right to seek further review by the court.
We vacate Section 3 and 4 of the November 2013 order and sections 4 and 5 of the January 2014 order.
[At the court's direction, Section III of its opinion, which concerns discrete issues, has been redacted from the published opinion, because it does not meet the criteria set by R. 1:36-2(d) for publication. The published parts of the opinion continue as follows.]
For the reasons stated, we affirm in A-3230-14, except as to those provisions of *696 the November 2013 and January 2014 orders which we have now vacated.

We use initials and pseudonyms to maintain the confidentiality of the parties and their child.

TMR was described at trial as a visitation modality, utilizing a "progression" of steps aimed at "rebuilding rapport" between Richard and defendant.

It would appear from the order itself that defendant did not oppose the motion for reconsideration, and defendant's appendix does not include any opposition, if indeed any was filed.

However, the record reveals that prior to the plenary hearing, defense counsel urged the judge not to accept the substantiated finding of abuse as dispositive of the issue. Because we are rejecting the arguments defendant now raises and affirming the judge's order in most respects, we choose not to address a specific argument raised in plaintiff's opposition, i.e., that defendant's "abandonment of his administrative law appeal is fatal ... to his attempts to overturn the finding that he sexually abused" Richard.

In In re Guardianship of D.J.M., 325 N.J.Super. 150, 151, 737 A.2d 1179 (Ch. Div. 1999), the Family Part considered "whether to stay a guardianship proceeding pending the outcome of a simultaneous criminal proceeding arising out of the same facts." While finding the defendant's Fifth Amendment arguments to be "compelling," the court concluded the child's interest in permanency outweighed the defendant's rights, and suggested the Legislature should grant "use immunity" to parents in the defendant's position. Id. at 162, 737 A.2d 1179. Because the issues in this case are significantly different, we express no opinion about the court's holding in D.J.M.