# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1211-19

P.T.,

    Plaintiff-Respondent,

v.

A.T.,

    Defendant-Appellant.

_____

Submitted April 27, 2021 – Decided May 5, 2021

Before Judges Fisher, Gilson, and Gummer.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Cumberland County, Docket No. FM-06-0217-09.

A.T., appellant pro se.

Bertram Law Office, LLC, attorneys for respondent (Rebecca J. Bertram, on the brief).

PER CURIAM

In this post-judgment divorce matter, defendant A.T.,[1] who according to the undisputed record has not been allowed to see his child in over four years, appeals the latest order in a series of orders imposing a "temporary suspension" of his parenting time. Because the court's continuous suspension of his parenting time is unsupported by any finding of defendant's unfitness or harm to the child and because the court misapplied the law, we reverse and remand for further proceedings.

The parties were divorced in 2009. They have one daughter, who was born in December 2006. Plaintiff, who is the child's mother, is the parent of primary residential custody. Since their divorce, the parties have filed numerous motions concerning parenting issues, most centering on defendant's parenting time. The trial court has issued over twenty orders addressing the parties' post-divorce disputes. In this appeal, we address the latest in that series of orders.

In February 2017, plaintiff filed an application to suspend defendant's parenting time, alleging their daughter had reported seeing defendant watch pornography on his cell phone. Plaintiff did not allege defendant had exposed their daughter directly to the pornography by showing it to her or had engaged

---

[1] We use initials to avoid any unnecessary invasion of the parties' privacy and because of the child-related issues.

A-1211-19

in any other improper conduct with her. On February 21, 2017, the court entered an order to show cause to address plaintiff's allegation and temporarily suspended defendant's parenting time, based solely on the allegation in plaintiff's verified complaint, pending the return date. Thus begins this four-year odyssey.

On March 17, 2017, the court conducted a hearing on plaintiff's application to suspend defendant's parenting time. The court heard testimony from an employee of the New Jersey Division of Child Protection and Permanency, who was involved in the case because the Division had opened an investigation based on a referral it had received. The Division employee testified the Division had not yet interviewed defendant and confirmed the child had made statements to investigators consistent with the allegation in the complaint. Defendant denied the allegation and expressed concerns "there is no terms to define where and how [his parenting time] will be restored." The court advised defendant "absolutely there would have to be some groundwork laid as to how that parenting time could be reinstated" if the court continued the suspension of defendant's parenting time.

Noting the record reflected consistent but uncorroborated statements by the child about seeing defendant watch pornography, the court did not make a

A-1211-19

finding defendant had watched pornography while the child was present. Nevertheless, the court continued the "temporary suspension" of defendant's parenting time, reasoning:

> So I am in a rather unenviable position as a judge where I have uncorroborated statements by a child that are only corroborated by their consistency, an argument by dad that the child is influenced by adults and an argument by mom that dad should have a psychological evaluation and or perhaps some psychological treatment in regard to this situation before dad is again allowed to see the child. Who, unquestionably by the reports as I remember, loved seeing her father when she did have an opportunity to do so, had clearly a very positive relationship with her father based on the reports of the supervised visitation. . . .
>
> I can either simply allow dad to continue to visit as he has been visiting as though nothing has happened . . . . Or I could err to the side of protecting the child, continue the visits as temporarily suspended and order that the father engage in a new psychological evaluation which takes into consideration [the court-appointed expert's] psychological evaluation and the statements of the child . . . making allegations allegedly in regard to this situation. And make sure that I have a psychological that says that taking into consideration all of these things, including this allegation, in regard to possibly viewing inappropriate material in the presence of the child and what that might tell a psychologist what that could lead to. It seems to me the right thing to do here is to order that I err to the side of protecting the child . . . .

A-1211-19

The court ordered defendant to undergo a psychological evaluation and stated it would conduct an additional hearing and "revisit" the suspension of defendant's parenting time after it received the psychological report.

After concluding the hearing and after the litigants left the courtroom, the judge in what he described as a "highly abnormal" procedure, went back on the record "in case . . . the Appellate Division[] is ever looking at this." He stated he "didn't want to say this in the presence of [defendant] because I would be inviting issues for myself in the future," specifically, "if I said it in [defendant's] presence he would never not argue strongly again, because he's very smart that way." The court described defendant as usually being "ferocious" in his arguments, but that day was "a lamb" and because defendant "meekly accept[ed] what I did makes me believe that there might be some truth to the accusations." He referred to his statement as an "observation." It certainly was not a finding rendered on substantial credible evidence in the record reached after giving defendant an opportunity to rebut any evidence against him.

On the same day, the court entered an order continuing the suspension of defendant's parenting time "until such time as [defendant] can complete a satisfactory psychological evaluation that addresses the concerns raised on the record" and requiring defendant to "undergo a psychological evaluation to

5

address the concerns that predicated the instant Order to Show Cause, and to follow through on any treatment recommendations that result from that evaluation." The court directed the parties to cooperate with the psychologist and authorized the psychologist to meet with plaintiff and the child if the psychologist deemed those meetings necessary. The court also granted defendant daily telephone communications with the child if the child did not "veto" those communications.

We dismissed defendant's appeal of that order because it was not a final order given the further proceedings the court anticipated having after defendant completed the psychological evaluation. See P.T. v. A.T., No. A-3932-16 (App. Div. May 16, 2018) (slip op. at 11).

In a letter dated September 18, 2017, the court advised defendant and plaintiff's counsel it was issuing a protective order limiting the dissemination of a September 3, 2017 psychological evaluation[2] of defendant to counsel only. The court stated the recommendations contained in the evaluation "must be

---

[2] The record does not contain a copy of the evaluation. The court permitted defendant, who is self-represented, to make arrangements to view the report at the courthouse.

satisfied in order for the court to consider allowing [defendant] to have further contact with the child."  The court set forth those recommendations in the letter:

> 1. [Defendant] should contact his prescribing physician pertaining to his current symptoms of forgetfulness, impaired concentration, and disrupted sleeping patterns. He should inform his physician of his beliefs pertaining to [plaintiff] and [another person] purportedly conspiring against him. His physician should forward any changes in his medication to the court.
>
> 2. [Defendant][3] should be afforded the opportunity to recomplete formal testing if he is inclined to do so.
>
> 3. [Defendant] should become involved in individual psychotherapy in order to address the way he forges ultimately deleterious male-female relationships. Reports of his participation in individual psychotherapy should be forwarded to the court.
>
> 4. When [defendant] has demonstrated participation in recommendations one and three, supported by appropriate documentation, then supervised visitation between him and his daughter . . . at the Courthouse could be supported.

On December 5, 2017, defendant filed a motion, attempting to prove he had complied with the recommendations and seeking parenting time.  In support of his motion, defendant certified he had met with his physician, had relayed to

---

3  The court began this paragraph by referencing "Ms." T.  We believe that reference was an error given the context and use of "he" later in the sentence.

him the information the court required him to relay, and had participated in biweekly psychotherapy, attaching documentation regarding two appointments.

On January 25, 2018, the court denied defendant's motion. The court found although defendant had stated "he has done the required evaluations, physician visit, and individual psychotherapy," he failed to provide the court with "a report . . . outlining the therapy, prognosis, plan, or an opinion that [d]efendant is not a danger to visit with his daughter." The court held "[w]ithout a report, [defendant] is far from reaching the level of a substantial change in circumstances necessary to consider a modification of the parenting time."

In our May 16, 2018 opinion, we noted we had been informed during the April 10, 2018 oral argument the psychological report had been completed. Ibid. We directed the court to hold a follow-up hearing concerning the "temporary suspension" of defendant's parenting time within thirty days of the opinion. Ibid. Following that directive, the court conducted a hearing[4] on June 7, 2018, and issued an order adopting the September 2017 evaluation and repeating the previous recommendations defendant had to meet for the court to consider permitting supervised visitation. The court further required defendant to follow

---

[4] The record does not contain a copy of the transcript of this hearing.

A-1211-19

those recommendations before it would accept for filing any further motions from him,[5] denied defendant's request for supervised visits at the courthouse, and barred defendant from contacting the child's school or attending school events.

On October 30, 2018, the court received a letter from defendant asking the court to schedule the second psychological evaluation provided for in the September 2017 evaluation. Two days later, the judge's law clerk sent a letter advising the court was denying the request because the evaluating doctor had indicated "there is no need for a re-evaluation until the above recommendations have been complete" and defendant had not provided documentation establishing he had completed them.

On December 7, 2018, the court received a letter from defendant disputing the court's findings and again requesting the second evaluation be scheduled. In a January 16, 2019 letter, the judge's law clerk responded, stating defendant had

---

[5] Defendant did not appeal this order. Given our remand, we remind the parties and the court that in E.S. v. H.A., 451 N.J. Super. 374, 390 (App. Div. 2017), we held a similar precondition violated the defendant's "right to invoke the equitable powers of the Family Part to modify its order denying him any parenting time." See also Parish v. Parish, 412 N.J. Super. 39, 44 (App. Div. 2010) (reversing order conditioning filing of future motions, including parenting-time motions, on requirement that parties participate in settlement conferences).

failed to supply documentation regarding the appointment with his physician, a report from the organization or doctor which whom he had had psychotherapy, or an opinion finding "[defendant] is not a danger to visit with his daughter." The law clerk stated defendant was "far from reaching the level of a substantial change in circumstances necessary to consider a modification of the parenting time."

On June 25, 2019, defendant filed a motion to demonstrate compliance with the court's orders and requesting parenting time. He included in the motion his physician's notes from a December 2017 appointment, documentation regarding his participation in psychotherapy, and psychological evaluations performed in October 2018 and June 2019. In the 2019 report, the evaluator concluded, "[g]iven these results, [defendant] does not appear to be at immediate or future risk to harm his daughter." Defendant understandably believed he had complied with the required recommendations.

Plaintiff opposed the motion, complaining she had not seen the reports and defendant had not provided proof he had spoken about the alleged pornography-viewing incident with any doctor or evidence "he has received help for this issue." She advised the court their daughter, then twelve years old, "rarely communicates with her father on the phone. She gets frustrated by the

10

superficial conversations she has with her dad. She does not feel that he is making a connection with her or listening to what she is saying." She noted, however, the child "does miss her father and would like to see him."

The court conducted a non-evidentiary hearing on July 26, 2019. During the hearing, the court stated

> I looked at my law clerk yesterday and I said to him, "Did I really enter an order that said that [defendant] should get a report or should try to" -- I guess I said he should follow the recommendations of [the September 2017 evaluation] and I guess I didn't get specific enough to say that anybody giving an evaluation of [defendant] should make sure that that person talks with [plaintiff] to address her concerns and sees the history of this case.

The court acknowledged defendant had submitted a report from a psychologist, opining defendant was not a danger to the child, but stated:

> I do not believe the person that rendered that report had any full knowledge of the totality of the circumstances of this case to such a point that I am satisfied to modify the order in some way and to allow you contact with a 12-year-old female child. I'm not comfortable with it, do not believe it to be in the child's best interest.

The court faulted the report for not referencing "all of the other incidents and concerns that existed in regard to this case, including the incident that caused your visitation to be suspended before." The court stated it would provide the information submitted by defendant to the doctor who prepared the September

11

2017 evaluation for further recommendations from him.[6]  Because the court was not "comfortable" with unsupervised visits, defendant asked the court for supervised visits with his daughter.  The court denied that request.

> I'm not going to take advantage of the court system again as of this time to provide for six short visits that would only – that would only introduce you to your daughter's life for a very short amount of time.  It might harm her when there were none after that. [7]

The court denied defendant's motion in a written order.

> The [c]ourt finds no change of circumstances that justifies modification of the prior order. . . . The [c]ourt does not believe that the individual who rendered the report stating that [d]efendant is no longer a danger to the children had full knowledge of the totality of the circumstances of this case to a point that this [c]ourt can modify the previous [O]rder.

Someone reading that order would think the court previously found defendant posed a danger to his child.  But we know the court made no such finding.

---

[6]  The record is devoid of any information regarding whether further recommendations were made.

[7]  We have cautioned courts about pre-judging future applications.  See, e.g., E.S., 451 N.J. Super. at 390 ("It may well be that any future application may fail, absent defendant's efforts to address the very issues [the court-appointed expert] saw as vital to the gradual reinstitution of parenting time.  However, the court should not reach that conclusion in advance of such a request.").

On August 13, 2019, defendant moved for reconsideration of the July 26, 2019 order. Defendant included in the motion a letter from the psychologist who had prepared the June 2019 report stating he was aware of plaintiff's allegation that defendant had watched pornography during his last visit with his daughter and found it "did not seem credible."

In an order dated September 13, 2019, and stamped filed on October 21, 2019, the court denied the motion, describing it as being "entirely without merit." The court found "no change of circumstances . . . justif[ying] reconsideration," repeating its belief defendant's evaluators did not have sufficient information. The court held defendant "failed to provide confirmation that he has complied with the recommendations" but "[i]nstead . . . sought two separate evaluations with conflicting results." This appeal followed.

In this appeal of the October 21, 2019 order, defendant asserts the court "is changing the reasoning behind the rejection of [d]efendant's petition to establish parenting time." Defendant complains, "[w]ithout a clear and specific description of the requirements to accomplish in order [to] establish parenting time, [defendant] will never be able to comply and will never be able to see the child." Defendant argues the court's decision was palpably incorrect because he provided proof of his compliance with the court's prior orders. Defendant asserts

he has not seen his daughter since the order to show cause was issued on February 21, 2017, over four years ago; plaintiff does not dispute that assertion.

Our review of a family judge's factual findings is normally limited. N.J. Div. of Child Prot. & Permanency v. J.B., 459 N.J. Super. 442, 450 (App. Div. 2019). We defer to a family judge's factual findings when supported by substantial, credible evidence in the record. N.J. Div. of Youth & Fam. Servs. v. F.M., 211 N.J. 420, 448 (2012); see also Cesare v. Cesare, 154 N.J. 394, 413 (1998). We intervene only when a trial judge's factual conclusions are "so wide of the mark" they are "clearly mistaken." N.J. Div. of Youth & Fam. Servs. v. G.L., 191 N.J. 596, 605 (2007). When the court makes no factual findings and holds no evidentiary hearing, there is nothing warranting our deference. Moreover, we review de novo a judge's legal conclusions. J.B., 459 N.J. Super. at 451.

Parents have a fundamental, constitutional right to raise, care for, and maintain a relationship with their children. N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 102 (2008); Wilke v. Culp, 196 N.J. Super. 487, 496 (App. Div. 1984). "[A]ssur[ing] minor children of frequent and continuing contact with both parents after the parents have separated or dissolved their marriage" is a public policy of our State. N.J.S.A. 9:2-4. Consequently, our law "favors

A-1211-19

visitation and protects against the thwarting of effective visitation rights." Wilke, 196 N.J. Super. at 496.

The State also has a responsibility "to protect children from serious physical and psychological harm, even from their parents." E.P., 196 N.J. at 496. See also J.B., 459 N.J. Super. at 451. Thus, "a parent's custody and visitation rights may be restricted, or even terminated, where the relation of one parent . . . with the child cause[s] emotional or physical harm to the child, or where the parent is shown to be unfit." Wilke, 196 N.J. Super. at 496. See also In re Adoption of J.J.P., 175 N.J. Super. 420, 430 (App. Div. 1980) (finding "[a]bsent serious wrong-doing or unfitness, the right of visitation is strong and compelling").

We reverse the court's order because it is premised not on a finding of unfitness of the parent or harm to the child – the court never made that finding – but on evolving requirements and a misapplication of the law. A court has the authority and even sometimes the obligation to restrict or terminate parental rights but may exercise that authority only when credible evidence clearly and convincingly establishes parental unfitness or harm to the child. See, e.g., E.S., 451 N.J. Super. at 379 (affirming order granting plaintiff sole legal custody and denying defendant parenting time based on trial court's finding by clear and

convincing evidence defendant had sexually abused the parties' child); Wilke, 196 N.J. Super. at 503 (holding father's visitation rights "should not have been denied unless it clearly and convincingly appeared that this was one of those exceptional cases where visitation would have caused physical or emotional harm to the children, or where it was demonstrated that the noncustodial parent was unfit").

As best we can tell, the court suspended defendant's parenting time in the February 2017 order to show cause based on allegations contained in plaintiff's verified complaint. On the return date, – without taking testimony from either parent, without interviewing the child, without any report from an expert, and before the Division investigator had interviewed defendant – the court continued the suspension, assuring defendant it was temporary, and saying it was "err[ing] to the side of protecting the child." The problem with that decision is the court had not determined the child needed protection from defendant.

Treating that decision as if it were a finding of unfitness, the court applied a change-of-circumstances standard to defendant's subsequent applications. The court denied all of defendant's subsequent applications because by failing to comply with the recommendations, he had not demonstrated a change of circumstances. The problem with those decisions is the "circumstances" causing

16

the suspension of defendant's parenting time were not fact-based findings of unfitness or harm to the child but an unproven allegation. See Finamore v. Aronson, 382 N.J. Super. 514, 522 (App. Div. 2006) (viewing party's request as one for modification of an order based on current facts and circumstances). Before the allegation was made, the circumstances, as recognized by the family court at the March 17, 2017 hearing, were that the child "loved seeing her father" and "had clearly a very positive relationship with" him. It was plaintiff's burden to prove the allegation before the circumstances changed. Only a decision as to whether the allegation was proven and, if proven, whether it renders defendant an unfit parent such that his right to parenting time should be modified or supervised will resolve this issue.

We understand the difficult decisions our family judges face when balancing a parent's rights and concern for a child. See E.S., 451 N.J. Super. at 383. But four years is not a temporary suspension, and a decision to bar a parent from seeing his child must be based on an actual finding of harm to the child or unfitness of the parent supported by substantial credible evidence in the record. That finding was never made here.

This matter is remanded for immediate entry of an order (1) granting defendant weekly supervised parenting time under the Division's supervision

effective ten days from the date of this opinion; and (2) scheduling to take place within thirty days of the date of this opinion an evidentiary hearing regarding whether defendant is entitled to unsupervised parenting time, considering the best interests of the child in conformity with our opinion, and, if so, what conditions, if any, should be imposed by the court. At the hearing, plaintiff must prove the allegation that defendant viewed pornography while the child was present and, if so, whether there is a risk of harm posed to the child if parenting time with defendant is resumed. The parties shall be permitted to present evidence and call witnesses and the court may consider the testimony of any qualified psychologist or expert proffered by the parties or appointed by the court. See Wilke, 196 N.J. Super. at 501 (discussing "the types of proofs from which it could be clearly and convincingly demonstrated that the reinstatement of [a party's] visitation rights would cause physical or emotional harm to the child.").

We also direct the matter be reassigned to a different family judge so the hearing can be conducted, and the issue determined based on the evidence presented at the hearing. Within fifteen days of the conclusion of the hearing, the newly-assigned judge is to issue a written order and opinion setting forth findings of facts and conclusions of law consistent with Rule 1:74(a). Copies

18

of the court's opinion and orders are to be sent to and filed with the clerk of the Appellate Division under this docket number. Each party will have fifteen days from the date of the family court's new order to file a supplemental brief stating whether he or she objects to the new order and, if so, the basis of all objections. The dates we have set are peremptory; the evidentiary hearing must take place within thirty days of the date of this opinion, the court must issue its order and opinion within fifteen days of the conclusion of the hearing, and the supplemental briefs must be filed within fifteen days of the date of the family court's new order.

Reversed and remanded for proceedings consistent with this opinion. We retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

19                                                          A-1211-19