**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2959-24

C.P.D., [1]

    Plaintiff-Respondent,

v.

J.L.,

    Defendant-Appellant.

_____

Argued April 29, 2026 – Decided May 8, 2026

Before Judges Smith and Berdote Byrne.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Ocean County, Docket No. FD-15-1008-16.

J. L., appellant, argued the cause on appellant's behalf.

Respondent has not filed a brief.

---

[1]  We use initials to preserve the confidentiality of domestic violence records, R. 1:38-3(d)(9), and protect the confidentiality of domestic violence victims, R. 1:38-3(d)(10).

Maya A. Hiebert argued the cause for amicus curiae American Civil Liberties Union of New Jersey Foundation (American Civil Liberties Union of New Jersey Foundation, attorneys; Maya A. Hiebert, Ezra D. Rosenberg, and Jeanne LoCicero, on the brief).

PER CURIAM

Defendant appeals from a Family Part order denying him supervised parental visitation and phone contact with his son pending his payment for and completion of reunification therapy. Defendant's parenting time was suspended in 2021 following a drug-related arrest, after which he completed substance abuse treatment and alleges he has since remained sober. In 2023, the court ordered reunification therapy, appointed a therapist over defendant's objection as to her fees, and assigned him full responsibility for the cost. When defendant could no longer afford the therapist and sessions ceased, he moved for supervised parental visitation or telephone contact with his child. The court denied the motion and ordered him to continue reunification therapy at his expense, without conducting a best interest of the child analysis pursuant to N.J.S.A. 9:2-4.

We agree with defendant that his visitation rights or contact with his child should not be conditioned upon the payment for or completion of his reunification therapy, and if such therapy remains necessary, it may proceed

2

A-2959-24

alongside some parenting time, in whatever form the court deems best for the child, with a more financially-accessible therapist. We remand this matter to the trial court for an immediate hearing, where the court shall determine what level of parenting time and contact is in the child's best interest.

I.

The record before us demonstrates this matter had been before the Family Part since 2017. The parties are the parents of a ten-year-old boy. The child resides with C.D., her fiancé, and their younger son. Until April 2020,[2] defendant had regular supervised parenting time with his son, which was frequently supervised by defendant's mother. In June 2020, C.D. obtained a temporary restraining order against defendant after he appeared at her home asking to see his son, and a final restraining order was later entered.

Defendant has a documented history of substance abuse. In November 2021, he was arrested on drug charges and the trial court immediately suspended all parenting time. He subsequently began substance abuse treatment, completing residential treatment on December 18, 2021, intensive outpatient treatment on March 7, 2022, and outpatient treatment on June 10, 2022. He

_____

[2] The record does not specify when the parties' relationship ended and when regular parenting time began.

A-2959-24

alleges he has maintained sobriety since November 2021, attending Alcoholics Anonymous meetings and undergoing multiple hair follicle drug tests, all of which have demonstrated negative results. Several members of defendant's recovery community sent character letters to the court on his behalf. On September 15, 2022, Lisa Harmon Mollicone, Licensed Clinical Alcohol and Drug Counselor, conducted a substance abuse evaluation of defendant and concluded he "appears to have addressed his substance use disorder and is steadfast in his recovery."

On July 13, 2023, Dr. Edward M. Franzoni, Ph.D., Licensed Psychologist, completed a court-ordered custody neutral assessment based on interviews with defendant, C.D., and the child. According to the report, C.D. stated her "true goal" was to have her fiancé adopt the child and to have defendant's parental rights terminated. After completing the assessment, Dr. Franzoni recommended reunification therapy between defendant and the child.

On September 19, 2023, the trial court ordered reunification therapy, designated defendant as responsible for the costs of the reunification therapy, and denied any interim contact between defendant and the child. The order stated reunification therapy may commence once the parties agree upon a

4

therapist, and if the parties could not agree to a therapist, the court would make a selection no later than October 5, 2023.

Thereafter, C.D. proposed three candidates, including Dr. Danielle Forshee, who was located over an hour away from defendant, required a retainer of over $5,000, and had a six-month waiting list. Defendant objected to this suggestion and proposed three alternative candidates, all located closer to his home. For reasons unknown, the court did not make its selection of a therapist until eight months later, on June 7, 2024. During this period, defendant had no contact with his son and wrote several letters to the court regarding the selection dispute.

On June 7, 2024, the court entered an order appointing Dr. Forshee as the family's reunification therapist over defendant's objection as to geographical distance and cost. Nevertheless, defendant paid an initial retainer to Dr. Forshee in July 2024, with assistance from his church, and was put on a payment plan. The initial reunification therapy session between defendant and his son occurred on December 18, 2024, followed by sessions on December 23, and January 23, 2025.

On December 26, 2024, Dr. Forshee issued a letter stating: "Moving forward from the initial successful reunification that occurred on December 18,

2024, this document contains the next steps in the process and recommendations." The letter recommended father-son sessions at her office two times per month "[u]ntil parenting time and contact is jointly agreed upon or ordered," and stated it would be a conflict of interest for her to opine on parenting time or phone contact.

On January 28, 2025, defendant filed a motion seeking parenting time, asserting reunification was complete based on Dr. Forshee's letter. On February 26, 2025, defendant was informed the morning of a scheduled session that his retainer balance was zero and a full replenishment of $4,500 was required to continue. He was unable to fund the replenishment, the session was cancelled, and no further sessions occurred. In total, defendant has expended $12,730 on reunification therapy and related costs and has not had contact with his son since the last therapy session on January 23, 2025.

On April 11, 2025, the trial court heard defendant's motion for interim parenting time. Despite defendant's inability to pay, the court ordered the parties to continue reunification therapy with Dr. Forshee, with defendant remaining responsible for all costs. The court also declined to allow any phone contact or supervised parenting time concurrent with the continued reunification therapy, reasoning defendant had misinterpreted the phrase "moving forward from the

6

initial successful reunification" in Dr. Forshee's letter to mean reunification therapy had been successfully completed. The court noted the letter was authored after only one session, and subsequent sessions had taken place following the letter's issuance, demonstrating the reunification process was not complete.

Regarding defendant's inability to continue to pay for reunification therapy, the court reasoned:

> Now, [defendant], through counsel, describes that there had been substantial monies expended on [his] behalf. I don't argue that. I think there was two retainers of approximately $4,500. This is not nominal costs. This is -- this is significant financial payments he made. And I'm concerned based on what was described that there may have been some confusion or miscommunication between Dr. Forshee and [defendant] as to continue the sessions, because [defendant] appeared to have been on some sort of payment plan, and then when he tried to continue that because the retainer was fully exhausted, Dr. Forshee wanted some lump sum payment, if you will, towards a retainer. And perhaps if [defendant] was aware of that, again, it may have been confusion or misunderstanding, he may have been saving that up or somehow making arrangements for that.
>
> So I think that's unfortunate. I don't blame [C.D.] for that. I don't blame [defendant] for that either. But Dr. Forshee, obviously, is entitled to be paid for her services. This process – and there is considerable debate as to the history that led us to this point. I don't think is necessarily as relevant now. But this all

7

stemmed from an order entered on September 19, 2023 indicating that the parties would comply with reunification therapy. And at that time, the parties were to provide some suggestions for a potential therapist, and they did so. And that was a process in and of itself.

. . . .

It is argued that [defendant] is unable to continue to pay for that. I would note I don't have any financial information to support that claim. And nor has there been any demonstration of any change of circumstances, a change in income or employment since this process began roughly in September of 2024. I'm not minimizing the cost. This is expensive without question. But I'm not satisfied there's been a demonstration that there's been a change of circumstance sufficient to reevaluate this requirement for reunification therapy.

. . . .

And nor do I think dispensing with the reunification therapy at this juncture serves [the child's] best interest . . . . It's simply too soon. It is a process, and there's been progress, but this -- the order that was entered for reunification therapy, it was contemplated that it wouldn't only be begun, that it would be completed. And it even indicates, "Both parties shall follow the recommendations of the reunification therapy," et cetera.

With respect to its denial of supervised parenting time or telephone contact outside of the reunification therapy context, the court concluded:

In addition, I'm not convinced at this juncture that the [c]ourt should order any additional or concurrent

A-2959-24

> parenting time for [defendant] yet. I'd like to know what Dr. Forshee -- how things are going from her perspective. Some of this we're trying to interpret her position subsequent to her most recent report, and I'm not confident we can [do] that with any degree of accuracy. So I wouldn't be comfortable in ordering any additional parenting time until I have more information from Dr. Forshee.

The court also declined to allow defendant to supplement the record with financial documentation. Defendant appealed.

## II.

"Our review of Family Part orders is limited." Gormley v. Gormley, 462 N.J. Super. 433, 442 (App. Div. 2019). "We 'afford substantial deference to the Family Part's findings of fact because of that court's special expertise in family matters.'" Voynick v. Voynick, 481 N.J. Super. 207, 220-21 (App. Div. 2025) (quoting W.M. v. D.G., 467 N.J. Super. 216, 229 (App. Div. 2021)). Thus, a court's findings "are binding on appeal so long as [its] determinations are 'supported by adequate, substantial, credible evidence.'" Gormley, 462 N.J. Super. at 442 (quoting Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)). However, the family court's "legal conclusions, and the application of those conclusions to the facts," are reviewed de novo. Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013).

Defendant argues the trial court violated the Due Process and Equal Protection Clauses of the United States and New Jersey Constitutions by conditioning his access to his son on his financial capacity to pay for reunification therapy, and contends conditioning visitation or contact on his financial circumstances infringes on fundamental parental rights. Defendant asserts the court failed to make specific factual findings required by N.J.S.A. 9:2-4 and Rule 1:7-4(a) regarding the best interest of the child before denying supervised visitation or telephone contact, and declined to make further orders without conducting any statutory analysis or assessing risk or safety. He also claims the court dismissed substance abuse as a non-issue, yet relied on it to justify continued denial of contact, and improperly delegated parenting time authority to a third-party therapist and the custodial parent.

We agree defendant's parenting time or telephone contact should not have been prohibited without the court first making findings of fact and conclusions of law as to what is currently in the child's best interest, and without an assessment as to whether some form of visitation or contact is appropriate pending completion of reunification therapy. We agree the trial court delegated its responsibility to act in the best interest of the child to the third-party therapist.

10

We also agree the trial court failed to consider defendant's ability to pay for reunification therapy when it selected C.D.'s suggested therapist.

Apparently, the parties had initially agreed upon a parenting time plan. However, that plan was suspended when defendant was arrested prior to beginning substance abuse treatment. After completing treatment, defendant wished to resume contact and parenting time with his son. Then began the protracted saga of choosing a reunification therapist and subsequent motion practice. During this time, the court prohibited any contact, even supervised or by telephone. With the exception of three reunification visits in late 2024 and early 2025, defendant has not seen or spoken with his son in six years.

Even where a parent poses some risk to the child, parenting time may be ordered to occur under the supervision of an adult friend, relative, third-party, or contracted agency to protect the child's physical or emotional safety. Most frequently, supervision is ordered in cases regarding parental substance abuse or mental illness, child abuse, domestic violence, or parent-child reunification following alienation, even over the other parent's objection. Although in rare cases it may be appropriate for a court to prohibit all parenting time and contact between a parent and child because the risk to the child cannot be adequately addressed by supervision, see E.S. v. H.A., 451 N.J. Super. 374, 379 (App. Div.

11

2017), even in those cases the trial court must articulate the clear and convincing evidence of specific risks to the child that cannot be mitigated and the resultant harm that would stem from ordering any contact. Indeed, trial courts regularly afford incarcerated biological parents supervised visitation with their children, see N.J. Div. of Child Prot. & Permanency v. J.Y., 467 N.J. Super. 235, 249 (App. Div. 2021); they afford supervised visitation and contact to parents whose children have been removed from their care by the Division of Child Protection and Permanency for allegations of abuse and neglect, see N.J. Div. of Child Prot. & Permanency v. S.K., 456 N.J. Super. 245, 277 (App. Div. 2018); and, in certain, limited situations, have even ordered continued visitation for parents whose rights have been terminated by court order while their appeals are pending. See In re Guardianship of R.O.M.C., 243 N.J. Super. 631, 634 (App. Div. 1990).

Our courts have long recognized that "[t]he right of a [biological] parent to raise a child and maintain a relationship with that child, without undue interference by the state, is protected by the United States and New Jersey Constitutions." N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 102 (2008). "[A]ssur[ing] minor children of frequent and continuing contact with both parents after the parents have separated or dissolved their marriage" is a

public policy of our State. N.J.S.A. 9:2-4. Our law "favors visitation and protects against the thwarting of effective visitation rights." Wilke v. Culp, 196 N.J. Super. 487, 496 (App. Div. 1984). Visitation and contact between a parent and a biological child are generally favored unless there is a demonstrated risk to the child resulting from the visitation or contact that cannot be mitigated by the type of contact ordered. That is because we recognize the lack of contact between a parent and child is a risk unto itself and promotes parental alienation. See N.J. Div. of Child Prot. & Permanency v. A.S.K., 236 N.J. 429, 429 (2019).

"The welfare of a child is the ultimate controlling factor when a court determines questions of visitation, custody, and the upbringing of a child." New Jersey Div. of Child Prot. & Permanency v. M.C., 456 N.J. Super. 568, 583 (App. Div. 2018); see also N.J.S.A. 9:2-4. Thus, "visitation rights should not . . . [be] denied unless it clearly and convincingly appear[s] that this [is] one of those exceptional cases where visitation would have caused physical or emotional harm to the child[], or where it was demonstrated that the noncustodial parent was unfit." Wilke, 196 N.J. Super. at 503.

The trial court's order was not premised on a finding of harm to the child resulting from visitation with his father, whether supervised or not, but on defendant's inability to pay for continued reunification therapy. See Matter of

Adoption of A Child by C.J., 465 N.J. Super. 162, 175 (App. Div. 2020) ("To be sure, the obligation of a parent to provide support is considered to be independent of the parent's right to parenting time."). A court may only restrict parental visitation rights where credible evidence clearly and convincingly establishes parental unfitness or harm to the child. See E.S., 451 N.J. Super. at 379 (affirming order granting the plaintiff sole legal custody and denying the defendant parenting time based on trial court's finding by clear and convincing evidence the defendant had sexually abused the parties' child). However, the court made no findings regarding the best interests of the child in denying defendant visitation rights. See R. 1:7-4(a) ("The court shall, by an opinion or memorandum decision, either written or oral, find the facts and state its conclusions of law thereon . . . on every motion decided by a written order that is appealable as of right."). Although the court found foregoing further reunification therapy would not be in the child's best interest, that finding addressed only the therapy, not whether defendant was unfit or whether any visitation or contact would harm the child.

To be clear, defendant's visitation rights or contact cannot be predicated upon the payment of the reunification therapy costs. Our jurisprudence is clear that visitation is "the presumptive rule, subject to the considerations set forth in

N.J.S.A. 9:2-4, . . . and is almost 'invariably' granted to the non-custodial parent." V.C. v. M.J.B., 163 N.J. 200, 228 (2000) (quoting Beck, 86 N.J. at 495). A parent's inability to fund court-ordered therapy should not operate as a barrier to this presumptive right. The trial court's appointment of Dr. Forshee, over defendant's repeated objections as to her cost and lack of geographical proximity, and its subsequent denial of any visitation or contact when he could no longer afford her fees, effectively conditioned his contact with his son on his financial means. Regardless of whether the court deems continued reunification therapy necessary, it may be completed alongside visitation, whether supervised or unsupervised, and defendant's telephone contact with his son. Any delay in further contact serves to further alienate defendant from his son, which is especially concerning given the amount of time that has elapsed without their contact, and C.D.'s professed goal of seeking the termination of his parental rights.

We reverse the April 11, 2025 order denying parenting and phone time, and remand for a plenary hearing for appropriate findings pursuant to N.J.S.A. 9:2-4 as to whether some form of visitation and contact are clearly and convincingly inimical to the child's best interest, and for consideration of the appointment of an affordable reunification therapist. We order the court to

A-2959-24

conduct a hearing within thirty days to consider implementation of an interim order of supervised visitation and phone contact pending these further proceedings.

Reversed and remanded for an interim hearing and a plenary hearing. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

A-2959-24